UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x

CESSNA FINANCE CORPORATION,

        Petitioner,

v.

GULF JET LLC, KHALID MOHAMMAD SAEED AL MULLA, and HUSSEIN MOHAMED SALEM AL MEEZA,

        Respondents.

------------------------------------------------x

14 CIV 2149 (CARTER)

**PETITION TO CONFIRM ARBITRAL AWARD**

Robert L. Weigel
Anne M. Coyle
Gibson, Dunn & Crutcher LLP
200 Park Avenue, 47th Floor
New York, New York 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

*Attorneys for Petitioner Cessna Finance Corporation*

Petitioner Cessna Finance Corporation ("CFC," "Cessna," or "Petitioner"), by its attorneys, Gibson, Dunn & Crutcher LLP, hereby respectfully alleges as follows:

1. This action seeks confirmation, pursuant to the Federal Arbitration Act, of an arbitration award (the "Award") rendered by an ICC International Court of Arbitration tribunal (the "ICC Tribunal") seated in New York City on January 17, 2014 in favor of CFC against all three Respondents in the amount of $9,644,659.05 plus post-Award interest. All three Respondents received notice of the arbitration and hired counsel to appear in the arbitration. The three respondents filed answers and engaged in motion practice in front of the arbitrator. The Respondents lost the motion filed by their counsel. They ultimately chose not to attend the hearing conducted by the arbitrator. After hearing testimony from five witnesses over two days, the arbitrator, Mr. John Judge, a solicitor from Canada, issued the 122-page Award that is the subject of this petition.

2. A certified copy of the Award sought to be enforced is annexed hereto and incorporated as if fully set forth herein.

3. Certified copies of the arbitration agreements are annexed hereto and incorporated as if fully set forth herein.

4. A certified copy of Procedural Order #2, issued by the ICC Tribunal, which is explicitly incorporated into the Award, is annexed hereto and incorporated as if fully set forth herein.

## THE PARTIES

5. Petitioner CFC is a company organized and existing under the laws of Kansas, and its address and principal place of business is 220 West Douglas, Suite 300, Wichita, Kansas, 67202-3106. CFC is a wholly owned subsidiary of Textron Financial Corporation, which in turn is a

wholly owned subsidiary of Textron, Inc., a corporation whose shares are publicly traded on the New York Stock Exchange.

6. Respondent Gulf Jet LLC ("Gulf Jet") is a corporation organized and existing under the laws of the United Arab Emirates. Upon information and belief, its address and principal place of business is Al Yasmeen Building, Suite 406, Salah Uddin Road, Hor Al Anz, Diera, P.O. Box 184237, Dubai, United Arab Emirates.

7. Respondent Khalid Mohammad Saeed Al Mulla ("Al Mulla") is an individual whose last known address is P.O. Box 271, Dubai, United Arab Emirates.

8. Respondent Hussein Mohamed Salem Al Meeza ("Al Meeza") is an individual whose last known address is P.O Box 157, Dubai, United Arab Emirates.

## JURISDICTION AND VENUE

9. This action to confirm the Award arises under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 (the "New York Convention") as codified under the Federal Arbitration Act, 9 U.S.C. § 201, *et seq.*, and specifically 9 U.S.C. §§ 201, 202 and 207. This Court has original jurisdiction over the subject matter of this action pursuant to 9 U.S.C. §§ 203 and 207, and 28 U.S.C. § 1331. Venue has been properly laid in this district pursuant to 28 U.S.C. § 1331 and 9 U.S.C. § 204.

10. This Court has original jurisdiction over this action by virtue of the following: Gulf Jet is a foreign commercial entity engaged in international commerce and the transactions that relate to the underlying business transactions and the Award constitute international commerce; Al Meeza and Al Mulla are engaged in international commerce, including in the underlying business transactions and the Award; all four Parties have agreed in writing to arbitration in New York, the United States of America (a State that is a signatory to the New York Convention); and all

3

four Parties are from New York Convention contracting states (the United Arab Emirates and the United States).

11. This Court has *in personam* jurisdiction over Respondents pursuant to Sections 301 and 302 of the New York Civil Practice Law and Rules by virtue of the following facts:

12. CFC and Gulf Jet entered into two jet aircraft leases on June 15, 2007 (and which closed in August 2007), each leasing to Gulf Jet a single jet aircraft for 120 months (the "Lease agreements"). The Lease Agreements were otherwise identical, including identical arbitration provisions. Under these agreements, Gulf Jet was obligated to make monthly payments for the 120-month terms of the leases and to otherwise comply with the terms of the Lease Agreements.

13. CFC entered into two guaranty agreements each with Al Mulla and Al Meeza, corresponding to the two Lease Agreements, totaling four guaranties (the "Guaranty Agreements"). Thus, Al Mulla and Al Meeza each guaranteed both Lease Agreements. Under the Guaranty Agreements, Al Mulla and Al Meeza unconditionally guaranteed the payment to CFC (or to its order) of all amounts owed by Gulf Jet as Lessee under each Lease and further unconditionally guaranteed the performance of all of the Lessee's obligations under each Lease Agreement.

14. The Lease Agreements and Guaranty Agreements each provided for arbitration in accordance with the ICC Rules. In addition, each specified New York as the seat of arbitration and English as the language of the arbitration. Furthermore, each specified Kansas law as the governing substantive law. The arbitration provisions in each of the Lease Agreements are identical. The arbitration provisions in the four Guaranty Agreements are identical to each other except for typographical errors. All six arbitration agreements are substantially similar (collectively, the "Arbitration Agreements").

4

15. In agreeing to arbitration seated and conducted in New York, Respondents have consented to the jurisdiction of the courts in the State of New York, and, in particular, the United States District Court for the Southern District of New York for the specific purpose of confirming and enforcing the resulting arbitral award.

## INTRODUCTION

16. On January 17, 2014, the ICC Tribunal determined that Gulf Jet, Al Meeza and Al Mulla were jointly and severally liable for the amounts owed under the Lease Agreements and the Guaranty Agreements, including pre- and post-award interest. The ICC Tribunal awarded CFC a total of $8,818,938.85 for the breaches of the Lease Agreements and the Guaranty Agreements, including pre-award interest. Award, ¶¶ 235-41. The ICC Tribunal also ordered that Respondents pay CFC post-award interest of 18% per annum (1.5% per month or any fraction thereof) on the amount of $5,902,795.29 from the time of the Final Award up to the day of payment. *Id.* In addition, the ICC Tribunal held that Respondents must compensate CFC for the arbitration fees and costs, as well as CFC's legal costs and expenses. This obligation amounted to $825,720.20. *Id.* ¶¶ 243-245. Finally, the ICC Tribunal awarded CFC declaratory relief, declaring that "Gulf Jet is in breach of the covenant in paragraph 24 of the two Leases to arbitrate all disputes arising out of or in connection with the Leases by reason of having commenced the Dubai Court Proceeding in October 2010 and by continuing that Proceeding." *Id.* ¶ 243.

17. Pursuant to the Arbitration Agreements, the arbitration proceeding was conducted before an ICC tribunal consisting of a prominent arbitrator, Mr. John A.M. Judge. None of the Respondents attended the hearing, although each was duly notified of each step of the proceedings.

5

18. Instead, Gulf Jet and Al Meeza initially appeared through counsel and objected to the jurisdiction of the ICC Tribunal, then refused to participate further after the ICC Tribunal deferred consideration of their objection until the merits hearing.

19. Al Mulla participated in most of the pre-hearing stages of the arbitration through counsel, including agreeing to (but not signing) the Terms of Reference and submitting a Reply Memorial in response to CFC's Statement of Claim, and agreeing to share the costs of the space rented specifically for the hearing. Al Mulla then failed to attend the hearing.

20. Despite advice from the ICC Tribunal, none of the Respondents brought their objections to the arbitration to the ICC Court or to a court with jurisdiction over the arbitration. *Id.* ¶¶ 50-51.

21. After the Respondents abandoned the Arbitration, they continued to receive notice of each step of the arbitration.

22. Despite Respondents' refusal to participate in the hearing, the ICC Tribunal considered the defenses each of the Respondents had raised and questioned CFC's witnesses based on these defenses. *Id.* ¶ 5.

23. After a full hearing on the merits of CFC's claims, the ICC Tribunal issued the Award, concluding that it had jurisdiction over the dispute based on the Arbitration Agreements and finding each of the Respondents jointly and severally liable to CFC for the funds owed under the Lease Agreements and Guaranty Agreements.

## RESPONDENTS' REFUSAL TO PARTICIPATE IN THE ARBITRATION

24. Although the Respondents participated in the arbitration's early stages, they each abandoned the arbitration before the merits hearing. *Id.* ¶ 3. The ICC Tribunal found "that Gulf

Jet, Al Meeza and Al Mulla were each under a duty to arbitrate in good faith. . . . The Respondents consistently failed to meet this obligation." *Id.* ¶ 232. "In retrospect, it now appears that the Respondents sought to undermine the arbitral process rather tha[n] in good faith abide by their agreement to arbitrate." *Id.* Additionally, none of the Respondents paid any of their shares of their arbitral costs, compelling CFC to pay those amounts to maintain the arbitration.

25. Al Mulla did not contest the ICC Tribunal's subject matter or personal jurisdiction. *Id.* ¶ 19. Gulf Jet and Al Meeza, however, disputed jurisdiction on several grounds, and moved the ICC Tribunal for a stay of the Arbitration premised on a civil suit Gulf Jet (but not Al Meeza) allegedly brought in the UAE before CFC filed this arbitration (the "UAE suit").[1] The ICC Tribunal issued Procedural Order #2, denying the motion to stay because, *inter alia*, CFC was never served in the UAE suit. Procedural Order #2 ¶ 5.5 ("That fact is undisputed.")). The ICC Tribunal called the UAE suit a "breach of [the parties'] intention and clear obligation to arbitrate." Award ¶ 108.

26. Shortly before the ICC Tribunal issued that order, Gulf Jet and Al Meeza then informed the ICC Tribunal that they would no longer recognize the arbitration, arguing that the ICC Tribunal had (a) shown bias against Gulf Jet and Al Meeza by, *inter alia*, refusing to close proceedings, and (b) lost its jurisdiction by not issuing Procedural Order #2 by a tentative date in the procedural timetable. *Id.* ¶ 46.

---

1  The ICC Tribunal determined that Gulf Jet's arguments in its purported UAE suit were also at issue in the arbitration. The ICC Tribunal considered these arguments during the merits phase of the arbitration and rejected them. *Id.* ¶¶ 222-23.

27. The ICC Tribunal rejected these arguments. *Id.* ¶¶ 49-51, 120. The ICC Tribunal explained that first, a bias challenge must be made to the ICC Court (which Gulf Jet and Al Meeza never did). Second, an ICC tribunal's jurisdiction is not premised on issuing procedural orders by any given date (a date which was given as "tentative" on the procedural time table). *Id.* ¶ 120. In fact, the delay was due to the Respondents' own failure to disclose that CFC was never served in the UAE Suit. *Id.*

28. The significance of Gulf Jet and Al Meeza's withdrawal was evident: "When the efforts to undermine the arbitral process did not succeed, the Respondents then withdrew active participation." *Id.* ¶ 232.

29. As for Gulf Jet and Al Meeza's attack on jurisdiction based on the assertion that the Arbitration Agreements were invalid, the ICC Tribunal decided to hear those during the merits phase of the arbitration, as is typical in international arbitrations. Procedural Order #2 ¶¶ 1.3-1.4; *see also* Award ¶ 45. However, Gulf Jet and Al Meeza abandoned the arbitration before that stage. As the ICC Tribunal noted at that time, Gulf Jet and Al Meeza "have expressly declined to adduce *any* evidence on this motion [their last substantive submission] to support the invalidity of the various arbitration clauses ...." Procedural Order #2 ¶ 5.1 (emphasis in original).

30. Although Al Mulla continued to participate in the proceeding until just before the hearing, including by participating in a conference between and among the Tribunal and CFC and submitting a Reply Memorial in response to CFC's Statement of Claim, he and his counsel simply did not appear at the hearing itself (without notifying the Tribunal). Award ¶ 58.

31. Despite their intentional withdrawal from the Arbitration, all three Respondents "continued to receive all correspondence from the Tribunal regarding the ongoing conduct of this

8

arbitration." *Id.* ¶ 53. Notices included a "Notice of Hearing" sent by email and courier, "to ensure that notice of the date and location of the merits hearing was duly given, although that information had already been set out in the Procedural Orders." *Id.* ¶ 56.

## VALIDITY AND ENFORCEABILITY OF THE ARBITRATION CLAUSES AND JURISDICTION OF THE ARBITRAL TRIBUNAL

32. The ICC Tribunal determined that the Lease Agreements and Guaranty Agreements and the Arbitration Agreements contained therein were valid and binding on the parties. The ICC Tribunal ruled that it therefore had jurisdiction to decide the case.

33. The Lease Agreements include identical arbitration provisions. Paragraph 24 of the Lease Agreements, each entitled "GOVERNING LAW AND JURISDICTION," written in bold and all capital letters, read in their entirety:

> THIS LEASE SHALL BE CONSTRUED AND INTERPRETED IN ACCORDANCE WITH THE LAWS OF THE STATE OF KANSAS, IRRESPECTIVE OF SUCH STATE'S CHOICE OF LAW PRINCIPLES, WHERE THIS LEASE HAS BEEN EXECUTED BY AND DELIVERED TO OWNER. ALL DISPUTES ARISING OUT OF OR IN CONNECTION WITH THIS LEASE SHALL BE FINALLY SETTLED UNDER THE RULES OF ARBITRATION OF THE INTERNATIONAL CHAMBER OF COMMERCE BY ONE OR MORE ARBITRATORS APPOINTED IN ACCORDANCE WITH THE SAID RULES. THE ARBITRATION SHALL TAKE PLACE IN NEW YORK, AND THE PROCEEDINGS SHALL BE CONDUCTED IN THE ENGLISH LANGUAGE.

34. The Guaranty Agreements included nearly identical arbitration agreements to each other—the only difference is the spelling of "guaranty" and the inadvertent use of "emirate" instead of "state" in the first sentence in the Guaranty Agreement with Al Mulla. The ICC Tribunal noted the latter error with the edit "*sic*," and held that the clauses "clearly and unequivocally established that the substantive laws governing the agreements were the laws [of] the State of Kansas . . . irrespective of that State's choice of law principles." Award ¶ 20.

9

Paragraph G of the Guaranty Agreements, written in bold and all capital letters, read in their entirety:

> THIS GUARANTY SHALL BE CONSTRUED AND INTERPRETED IN ACCORDANCE WITH THE LAWS OF THE STATE OF KANSAS, U.S.A. IRRESPECTIVE OF SUCH STATE'S CHOICE OF LAW PRINCIPLES. ALL DISPUTES ARISING OUT OF OR IN CONNECTION WITH THIS GUARANTY SHALL BE FINALLY SETTLED UNDER THE RULES OF ARBITRATION OF THE INTERNATIONAL CHAMBER OF COMMERCE BY ONE OR MORE ARBITRATORS APPOINTED IN ACCORDANCE WITH THE SAID RULES. THE ARBITRATION SHALL TAKE PLACE IN NEW YORK, AND THE PROCEEDINGS SHALL BE CONDUCTED IN THE ENGLISH LANGUAGE.

35. Al Mulla did not dispute the ICC Tribunal's jurisdiction "[b]y reason of these arbitration clauses in the Leases and Guarantees . . . ." Award ¶ 19; *see also* ¶ 104 (stating that Al Mulla "did not at any time challenge the jurisdiction of this Tribunal to proceed with this arbitration"). Gulf Jet and Al Meeza, however, made several objections to the ICC Tribunal's jurisdiction and the validity of these clauses during the limited period of their participation in the arbitration. The ICC Tribunal considered and rejected each of these objections.

36. Gulf Jet and Al Meeza argued that the UAE suit preempted the arbitration and that, under UAE law, the UAE court had "exclusive" jurisdiction over the dispute. Further, they argued that CFC had waived its right to arbitrate by not appearing in the UAE suit (despite never being served).

37. The ICC Tribunal found that CFC was never served in the UAE Suit. Gulf Jet, joined by Al Meeza, eventually conceded that CFC was never served in the UAE Suit (Procedural Order #2 ¶ 2.12), a fact also demonstrated in the UAE court documents they submitted to the ICC Tribunal (Award ¶ 48). Instead, Gulf Jet and Al Meeza argued that CFC was obligated to participate in the UAE action, instead of the arbitration, because it knew the suit existed.

38. The ICC Tribunal reviewed the UAE law excerpts provided by Gulf Jet and Al Meeza, and concluded that "there is nothing in the language of those Articles to even suggest that such jurisdiction [of the UAE court] was exclusive." Award ¶ 105(b). Further, the ICC Tribunal held that CFC did not waive its rights to arbitration in a suit for which it never received service. The ICC Tribunal "disagree[d] completely" with the suggestion that CFC waived its rights because it *knew* of the UAE suit, as "[p]roper service is a fundamental prerequisite of any judicial system, one which is also acknowledged by the Dubai Court itself which has continuously adjourned that proceeding to allow proper service on Cessna through diplomatic channels." *Id.* ¶ 105(c). Finally, the ICC Tribunal held that "the laws of the [UAE] are simply not applicable to this arbitration or to the jurisdiction of this Tribunal." *Id.* ¶ 105(d).

39. More fundamentally, the ICC Tribunal found that "[t]he parties had expressed a clear intention to arbitrate their disputes," an intention which "underpins the basic structure and the legitimacy of the international arbitration regime . . . ." *Id.* ¶ 108.

40. In their motion to stay, Gulf Jet and Al Meeza requested the opportunity to present additional evidence to show the Arbitration Agreements' invalidity, which the ICC Tribunal granted. However, they "did not take advantage of that opportunity and no such evidence was adduced." *Id.* ¶ 105(a). The ICC Tribunal further noted that Gulf Jet in fact relied on the validity of the Lease Agreements in its UAE Suit—and in taking possession of the jets in the first place. *Id.* ¶ 115.

41. Despite Gulf Jet and Al Meeza's failure to adduce any evidence, the ICC Tribunal still examined their objection to jurisdiction on the basis that (a) the Lease Agreements and Guaranty Agreements were invalid because Al Mulla, then acting for Gulf Jet, did not have the authority to

bind Gulf Jet; (b) the arbitration clauses were not sufficiently conspicuous; and (c) the claim against Al Meeza required that Gulf Jet first refuse to pay an award to CFC.

42. The ICC Tribunal accepted CFC's "considerable evidence" that "Al Mulla did indeed have the authority" to bind Gulf Jet (as he did by notarized signature)—in fact, Al Mulla in his role as respondent to the arbitration never disputed the ICC Tribunal's jurisdiction. *Id.* ¶¶111-12. As noted above, Gulf Jet relied on the validity of the Lease Agreements in taking possession of the jets and in later bringing the UAE Suit.

43. Next, the ICC Tribunal rejected the argument that the arbitration clauses were void as overly inconspicuous. All of the Respondents were represented by reputable counsel during negotiations. *Id.* ¶ 116. Although Gulf Jet and Al Meeza argued that only a few clauses in the agreements were conspicuously capitalized, they neglected to mention that the arbitration and governing law clauses were included among those capitalized (and that the agreements were written in English and Arabic). *Id.*

44. Finally, the ICC Tribunal found that CFC's ability to exercise its rights under the Guaranty Agreements was not dependent on Gulf Jet first refusing to pay. Each Guaranty states in Paragraph C that CFC "may proceed directly against Guarantor for any amount or any performance hereby guaranteed. Guarantor hereby waives any right to require CFC to proceed first against Lessee . . . or to require the later joinder of Lessee . . . in any suit that CFC may bring pursuant to this Guaranty . . . ." *Id.* ¶ 117.

45. Based on the above, the ICC tribunal concluded that it had jurisdiction over the matter and over the parties, and that the dispute and the agreements would be governed by substantive Kansas law, while the law of the arbitration seat, New York, governed issues of procedure. *Id.* ¶ 109.

## THE RESPONDENTS' DEFAULT UNDER THE LEASE AGREEMENTS AND THE GUARANTY AGREEMENTS

46. As recited in the Award, CFC entered into two Lease Agreements with Gulf Jet, each leasing a Cessna Corporation (an affiliate of CFC) brand jet airplane to Gulf Jet. *Id.* ¶ 15. The Lease Agreements each obligated Gulf Jet to make monthly payments for the respective jets for 120 months. The Lease Agreements were executed in June 2007 and closed August 2007. *Id.*

47. Around the time it entered into the Lease Agreements, CFC entered into four Guaranty Agreements—two with Al Meeza and two with Al Mulla, in their personal capacities. These Guaranty Agreements obligated Al Meeza and Al Mulla to unconditionally guarantee all of Gulf Jet's obligations under each of the Lease Agreements. In the event of Gulf Jet's default, the Guaranty Agreements did not require CFC to take any actions before seeking compensation from Al Meeza and Al Mulla, including seeking compensation from Gulf Jet first. ¶¶ 65-67.

48. Gulf Jet was almost continuously in default from September 2007 to June 2010, making late payments with only two exceptions. *Id.* ¶ 69.

49. By 2010, Gulf Jet ceased making payments altogether. *Id.* ¶ 70. CFC gave Gulf Jet numerous opportunities to remedy the defaults or restructure the leases, but Gulf Jet refused to do so. *Id.* ¶ 71. Al Meeza, acting on behalf of Gulf Jet, agreed to surrender the aircraft, and CFC took possession of the jets in June 2010. CFC then made necessary repairs to the aircraft, performed due diligence to determine appropriate pricing, marketed them, and sold them.

50. CFC also carried out all necessary steps under each of the relevant agreements to notify the Respondents of the sales and their resulting obligations to compensate CFC for any deficiencies. *Id.* ¶ 77.

51. Because the sale of the aircraft did not fully compensate CFC for its losses under the Lease Agreements, CFC demanded the resulting losses ("Deficiencies") from the Respondents.

13

Their refusal resulted in the CFC filing its request for ICC arbitration pursuant to the Arbitration Agreements. *Id.* ¶¶ 80-84.

52. In their responsive pleadings, Respondents asserted various defenses, challenging both the validity of the Lease and Guaranty Agreements and CFC's sale of the aircraft. The ICC Tribunal rejected all of Respondents' defenses. In short, the ICC Tribunal found that CFC followed all procedures required under the Agreements and sold the aircraft in a commercially reasonable manner and at reasonable prices. *Id.* ¶¶ 171-90. Given a declining market for aircraft by that time, the aircraft sold for less than the value of the Lease Agreements, making the Respondents liable for the resulting Deficiencies. *Id.*

## DAMAGES AND COSTS

53. The ICC Tribunal calculated the damages suffered by CFC as Deficiencies from reselling each of the aircraft: $4,651,237.81 and $4,167,701.04 respectively, totaling $8,818,938.85. *See Id.* ¶¶ 197-98, 235-246. These amounts include pre-award interest, as required in the Lease Agreements. The ICC Tribunal also determined the post-award interest owed CFC under the Lease Agreements: 1.5% per month or any fraction of a month on the deficiency principal amount of $5,902,795.29 from the time of the Final Award up to the day of payment. Finally, because the Guaranty Agreements make Al Mulla and Al Meeza "unconditionally" liable for Gulf Jet's defaults, the ICC Tribunal found both jointly and severally liable for the same amounts for which Gulf Jet is liable. *Id.* ¶ 211.

54. The ICC also ordered the Respondents, jointly and severally, to pay CFC its arbitration and legal costs of $825,720.20, which the ICC Tribunal called well-documented and reasonable. *Id.* ¶¶ 225-29, 234. Despite their obligation under Kansas and New York law to participate in the contractually mandated arbitration, Respondents "attempted to disrupt the entire arbitral

process," which "resulted in extra cost to Cessna." *Id.* ¶ 232. In fact, in order to maintain the arbitration, CFC had paid all four parties' arbitration fee obligations. *Id.* ¶ 234.

55. *The total amount owed to CFC as a result of the Award is $ 9,644,659.05, plus interest as set forth above.*

## COUNT I

56. Petitioner repeats and realleges, as though fully incorporated herein, Paragraphs 1-55.

57. The Award falls under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 (the "New York Convention").

58. This Petition is brought within three years after the Award was made.

59. None of the grounds for refusal or deferral of recognition or enforcement as specified in the New York Convention exists.

60. Pursuant to Sections 201 and 207 of the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, and Article IV of the New York Convention, the Award is entitled to confirmation, recognition and enforcement.

WHEREFORE, Cessna Finance Corporation respectfully requests that: (a) an order be made confirming the Award; (b) judgment be entered in accordance therewith; and (c) Cessna Finance Corporation be granted such other and further relief as the Court deems just and proper.

Dated: New York, New York
       March 26, 2014

                                              GIBSON, DUNN & CRUTCHER LLP

By:   */s/ Robert L. Weigel*
       Robert L. Weigel
       Anne M. Coyle
       Gibson, Dunn & Crutcher LLP
       200 Park Avenue, 47th Floor
       New York, New York 10166-0193
       Telephone: 212.351.4000
       Facsimile: 212.351.4035

       *Attorneys for Petitioner*
       *Cessna Finance Corporation*