UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
CESSNA FINANCE CORPORATION,

                        Petitioner,

                  1:14-cv-2149 (ALC)

    -against-

                  **OPINION & ORDER**

GULF JET LLC, et al,

                        Respondents,
-----------------------------------------------------------------x

**ANDREW L. CARTER, JR., United States District Judge:**

## I. INTRODUCTION

Cessna Finance Corporation ("Petitioner" or "CFC") commenced this action against Respondents Gulf Jet LLC ("Gulf Jet"), Khalid Mohammad Saeed Al Mulla ("Al Mulla") and Hussein Mohamed Salem Al Meeza ("Al Meeza") (collectively referred to herein as "Respondents") on March 25, 2014 to confirm the International Chamber of Commerce's ("ICC") January 17, 2014 Final Award ("Award") in its favor, pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 (the "New York Convention"), as codified in the Federal Arbitration Act ("FAA"), 9 U.S.C. § 201, *et seq.,*. Respondents have not yet appeared in this action. Before the Court is Petitioner's unopposed motion for a summary judgment confirming the arbitral award. For the reasons described below, that motion is granted.

1-26-15

## II. BACKGROUND[1]

### A. Lease and Guaranty Agreements

In June 2007, CFC entered into two lease agreements with Gulf Jet ("Lease Agreements"), each of which involved a lease of a Cessna-brand aircraft to Gulf Jet. (*See* Coyle Decl. Exs. 2-3; Ex. 8, ¶ 15.) In August 2007, CFC entered into two guaranty agreements each with Al Mulla and Al Meeza (the "Guaranty Agreements"), under which both Al Mulla and Al Meeza unconditionally guaranteed the performance of all of Gulf Jet's obligations under the Lease Agreements. (*See* Coyle Decl. Exs. 3-6; Ex. 7, ¶ 15.) Contained in each of the Lease and Guaranty Agreements were nearly identical provisions for the arbitration of any disputes under the agreement that was to be seated in New York, substantively governed by the laws of Kansas and conducted under the rules of the ICC. (*See* Coyle Decl. Ex. 8, ¶¶ 16-18.)

Beginning in around September 2007, Gulf Jet was consistently in default in making its payments under the Lease Agreements. (*See id.* ¶ 69.) CFC notified Al Mulla and Al Meeza of Gulf Jet's default, but neither made the payments as required under the Guaranty Agreements. (*See id.* ¶ 71.) In June 2010, after Gulf Jet had ceased making payments altogether, Al Meeza, acting on behalf of Gulf Jet, agreed to surrender the aircrafts to CFC. (*See id.* ¶ 72.) CFC took possession of the jets in June 2010, made necessary repairs and resold them per the terms of the Lease Agreements. (*See id.* ¶ 73-75, 77-79.) CFC subsequently demanded that Respondents compensate CFC for the costs and losses it incurred pursuant to the Lease Agreements and the Guaranty Agreements. (*See id.* ¶¶ 77, 80-83.) When Respondents failed to do so, CFC initiated an arbitration seated in New York City under the auspices of the ICC seeking damages, its

---

[1] The facts are drawn from Petitioners' Rule 56.1 Statement, as well as the July 7, 2014 Declaration of Anne M. Coyle in Support of the Motion for Summary Judgment ("Coyle Decl.") and the corresponding exhibits thereto.

2

arbitration and legal costs and pre and post-award interest. (*See id.* ¶¶ 84-86.)

### B. Arbitration Before the ICC

All three Respondents appeared through counsel and participated in the early stages of the arbitration. Al Mulla filed a reply memorial to CFC's statement of claim, while Gulf Jet and Al Meeza made initial jurisdictional objections to the arbitration, including a motion to stay it in favor of a civil suit Gulf Jet (but not Al Meeza) allegedly had commenced in the United Arab Emirates ("UAE civil suit") before CFC had commenced the arbitration. (*See id.* ¶¶ 19, 104, 107.) Gulf Jet and Al Meeza also subsequently asserted allegations of bias by the ICC and took the position that the arbitration had come to end on May 30, 2013 (a date noted in a procedural order issued by the ICC) because the ICC had not decided its procedural motion by then. (*See id.* ¶¶ 46, 51.) The ICC held that the date noted in the procedural order was merely hortatory and not relevant it to its jurisdiction, deferred resolution of Gulf Jet and Al Meeza's additional objection until after the hearing, and invited Gulf Jet and Al Meeza to elaborate on their claim of bias. (*See id.* ¶¶ 50, 120(c).) However, the Respondents, including Al Mulla, failed to appear at the hearing or any time thereafter, although they continued to be notified by the ICC of all the events in the arbitration. (*See id.* ¶¶ 53, 58.) In their absence, the ICC conducted a full hearing including its examinations of CFC's six witnesses concerning defenses raised by the Respondents at earlier stages of the arbitration. (*Id.* ¶¶ 58, 60.)

### C. January 17, 2014 Final Award

The ICC issued the Award on January 17, 2014. As a threshold matter, the ICC determined that it had jurisdiction over the arbitration because the Lease Agreements and Guaranty Agreements contained agreements to arbitrate that were sufficiently conspicuous, valid and binding on the parties, and not dependent on Gulf Jet first refusing to pay, and that it

therefore had jurisdiction to preside over the arbitration. (*See id.* ¶¶ 103-21.) The ICC rejected Gulf Jet and Al Meeza's argument that the UAE civil suit preempted the arbitration under the law of the United Arab Emirates ("UAE law"), finding that CFC had never been served in the civil suit and there was "nothing in the language of [UAE law cited by Gulf Jet and Al Meeza] to even suggest that [its] jurisdiction was exclusive." (*Id.* ¶ 105(b); *see also id.* ¶ 105(d) ("[UAE law is] simply not applicable to this arbitration or to the jurisdiction of the tribunal")). The ICC similarly rejected Gulf Jet and Al Meeza's argument that the Lease and Guaranty Agreements were invalid because Al Mulla did not have the authority to sign on behalf of Gulf Jet, observing that this was unsupported by the evidence, including the fact that Al Mulla himself never disputed the ICC's jurisdiction. (*Id.* ¶¶ 110-12.)

On the issue of liability, the ICC found Gulf Jet's payment obligations were "clear and unequivocal" under the Leases, and that it was "beyond dispute that Gulf Jet was *prima facie* in breach of its payment obligations and committed an Event of Default as defined under each Lease." (*Id.* ¶¶ 129-30.) It dismissed Gulf Jet and Al Meeza's defenses of economic hardship and *force majeure* on the grounds that a contractual clause permitting such a defense could not be implied under Kansas law since *force majeure* was expressly excluded in the contract. (*See id.* ¶¶ 133-37.) The ICC also found unsubstantiated Al Meeza's contention that the aircraft had been surrendered on the agreement that Gulf Jet would be discharged from further liability. (*See id.* ¶¶ 138-45.) Finally, the ICC rejected Al Mulla's defense that CFC had failed to validly serve a "Notice of Default" as required under the Lease, after finding that "the evidence is clear and unchallenged that by [a] Collateral Liquidation Notice dated January 5, 2011, Cessna gave the appropriate 14 day notice required." (*Id.* ¶ 152.)

In light of the foregoing, the ICC awarded CFC a total of $9,644,659.05, jointly and

4

severally against Respondents. (*Id.* ¶ 211.) It calculated the damages suffered by CFC as its shortfall after reselling each aircraft for $4,651,237.81 and $4,167,701.04 respectively, totaling $8,818,938.85, inclusive of pre-award interest. (*Id.* ¶¶ 197-98, 235-46.) The ICC also determined the post-award interest owed CFC under the Lease Agreements: 1.5% per month or any fraction of a month on the deficiency of principal amount of $5,902,795.29 from the time of the Award up to the day of payment. (*Id.* ¶¶ 236-41.) The ICC also ordered Respondents to pay CFC's arbitration and legal costs of $825,720.20, as CFC had paid all four parties' arbitration fee obligations to maintain the arbitration. (*Id.* ¶¶ 225-34.)

### D. Procedural History

CFC commenced this action by petitioning this Court to confirm an arbitration award on March 26, 2014. (ECF No. 1) After CFC's attempts to effectuate service on Respondents failed, CFC moved for leave for alternate service on the Respondents via e-mail, which this Court granted on May 1, 2014. (ECF Nos. 10, 12). On May 5, 2014, CFC effectuated service on the Respondents via e-mail, but Respondents never responded to the petition. As such, on June 23, 2014, this Court granted CFC leave to move for summary judgment. (ECF No. 63.) CFC filed its motion for summary judgment on July 7, 2014, but Respondents did not respond to the motion by the Court-ordered deadline of August 6, 2014, and have not done so to date.

### III. DISCUSSION

#### A. Legal Standards

"Confirmation of an award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court, and the court must grant the award unless the award is vacated, modified or corrected." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006). The standard of review by the court is exceedingly deferential, as "[t]he arbitrator's

rationale for an award need not be explained," and "only a barely colorable justification for the outcome reached by the arbitrators is necessary to confirm the award." *Id.* Despite the limited nature of district court review, however, the Second Circuit has held that default judgments in the context of confirmation and vacatur proceedings are "generally inappropriate," and that unopposed petition should instead be resolved under a summary judgment framework. *Id.* at 109-10; *see also Herrenknecht Corp. v. Best Rd. Boring*, No. 06 CV 5106(JFK), 2007 WL 1149122 (S.D.N.Y. Apr. 16, 2007).

Under Rule 56(a) of the Federal Rules of Civil Procedure, a court can grant summary judgment if the record "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law," and in genuine dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party can satisfy their burden by showing that the non-moving party has failed "'to come forth with evidence to permit a reasonable juror to return a verdict in his or her favor' on an essential element of a claim." *Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (quoting *New Orleans Empls. Ret. Sys. v. Omnicom Grp., Inc.*, 597 F.3d 501, 509 (2d Cir. 2010)). Although a non-movant's failure to respond to a motion for summary judgment will weigh against it with respect to issues not resolved by the record, "[i]f the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied *even if no opposing evidential matter is presented*." *D.H. Blair*, 462 F.3d at 109-10 (quoting *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*,

373 F.3d 241, 244 (2d Cir. 2004) (internal quotation marks and citations omitted)).

### B. Analysis

Applying the foregoing legal standards, the Court confirms the Award. The uncontroverted materials CFC has submitted in support of its motion for summary judgment demonstrate the lack of any triable factual issue, as it establishes the existence of a valid and binding contract and arbitration agreement between the parties. Moreover, although the ICC was under no obligation to explain its decision, this Court's finds the ICC's analysis in the Award to be meticulous and well-reasoned. The Award is firmly rooted in the evidence offered by Petitioner, and the ICC Tribunal also went to significant lengths to fairly evaluate the arguments proffered by Respondents before they withdrew from the arbitration. The Award's computation of damages and costs is also based on the parties' agreements and the evidence in the record. In short, there is plainly more than a "barely colorable" justification for the Award.

### IV.  CONCLUSION

For the reasons described above, CFC's Motion for Summary Judgment (ECF No. 19) is **GRANTED.** The Award is confirmed, and the Clerk of Court will enter judgment in favor of CFC and against Respondents, joint and severally, for the amount of $9,644,659.05, plus post-Award interest and statutory post-Judgment interest. Petitioners are directed to submit a proposed judgment consistent with this Order to the Clerk of Court **on or before February 2, 2015.**

**SO ORDERED.**

Dated: January 26, 2015

New York, New York

ANDREW L. CARTER, JR.
**United States District Judge**